### HENRY HUBER CO. v. J. L. MOTT IRONWORKS.

(Circuit Court of Appeals, Second Circuit. September 14, 1903.)

#### No. 81.

**1. PATENTS—INFRINGEMENT—BATH-WATER HEATERS.**

The Beaumont patent, No. 555,033, for a hot-water bath fixture, in view of the prior art and the doubtful utility of the structure, is entitled only to a narrow construction of its claims, covering only the details of construction, chief of which are the independently controlled steam valve, and a pair of valves, one for the water and the other for the steam pipe, connected for simultaneous operation. Claims 1, 2, and 6 construed, and *held* not infringed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion below see 113 Fed. 599.

This cause comes before this court upon appeal from a decree of the United States Circuit Court for the Southern District of New York dismissing bill for infringement of patent No. 555,033, granted

February 18, 1896, to complainant, as assignee of Thomas C. Beaumont, for a hot water bath fixture.

Walter S. Logan, for appellant.
W. P. Preble, Jr., for appellee.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

TOWNSEND, Circuit Judge. The patent in suit relates, so far as this appeal is concerned, to the class of water-heating devices wherein the water is heated by steam in pipes so arranged that the steam does not mingle with the water. The stated object of the alleged invention is to avoid all danger of scalding by providing means for controlling admission of water and steam so "that the steam cannot be turned on without also turning on water, while the flow of steam may be regulated, independently of the flow of water to a greater or less extent." The means employed to accomplish this result are described generally as follows:

"The improved apparatus has a compound valve for controlling the admission of water or steam to the water-heating and steam passages, consisting of a shell having steam and water passages through it, a pair of valves connected together, and adapted to close the steam and water passages, respectively, and an independent valve adapted to close the steam passages only, so that steam can flow only when both valves are open, and cannot be turned on without thereby opening the water valve."

The only claims involved in this appeal are the first, second, and sixth, which are as follows:

"(1) The combination with a water-outlet passage of a compound valve for controlling the admission of water and steam thereto, consisting of a shell having two distinct inlet-passages for water and steam, a pair of valves connected for simultaneous operation, and adapted to close, respectively, the steam and water passages, and an independent valve adapted to close the steam passage, whereby steam can flow only when both valves are open, and cannot be turned on without also turning on a stream of water to be heated."

"(2) The combination with a water-outlet passage of a compound valve for controlling the admission of water and steam, consisting of a shell having two distinct steam and water inlet-chambers and outlet-seats therefrom, a valve-stem and two valves carried thereby, the one closing the steam-outlet seat, and the other the water-outlet seat, and an independent stem carrying a valve closing the steam-outlet seat, whereby the former stem controls the flow of water, and both control the flow of steam, so that the steam cannot be turned on without also turning on a stream of water to be heated."

"(6) The combination of a valve-shell, B, formed with steam and water inlet chambers, c and d, and outlet-seats, h and o, therefrom, valves, i and p, closing against said seats, respectively, a valve-stem, J, carrying both said valves, and formed in two sections screwed together, with a valve, p, between them, and a valve, i, swiveled on the section, q', by means of a coupling nut, T', engaging the head, t, of this stem-section."

The first two claims cover generally, and the sixth specifically, a construction comprising a hollow shell divided into two chambers, one of which is connected with a steam, the other with a water, supply. These connections are controlled by a compound valve, consisting of a pair of valves on one stem operated simultaneously by the handle of one screw, and an independent valve on a separate

stem controlling the supply of steam, and operated by another and independent handle and screw. When the stem carrying the two valves is screwed out, it opens the valve connecting with the cold-water passage, and permits cold water to flow out through the faucet. By the same operation the other valve connecting with the steam chamber is unseated, but steam cannot enter the chamber until the other independent valve controlling the steam supply is opened. All the valves are normally closed. By means of this arrangement the danger of scalding in opening them under ordinary conditions is reduced to a minimum, provided the valve joints are tight.

There have been three distinct stages in the progress of the art of water heating. In the first devices, cold water was heated by mixing it with hot water; later devices mixed it with steam; and the still later class of devices, to which the patent in suit belongs, accomplished the result by the external application of heat. The construction and arrangement of the earliest devices shows that their inventors had the same object in view as that of the patent in suit. Thus Baldwin, in his patent of 1854, showed a three-way cock so connected with the cold and warm water pipes of a shower bath as to admit cold and warm water mixed, or cold and warm water separately, and the drawings and normal position of the valve handle indicate an arrangement in which no warm water could flow until after the cold water had been fully turned on. Mattson, in his patent of 1864, provided for such mixing of water, and its delivery by a pump at any temperature desired; such temperature being regulated by a lever, and indicated by a scale. And Blessing, in 1879, showed how by first elevating a valve stem cold water alone could be obtained, and how a further elevation produced a mixture of cold and hot water at any desired temperature. The patent provided for a further elevation when hot water only was desired, but this was merely an additional possible advantage in the use of said apparatus. The foregoing patents illustrate the means used in the devices of the first or water-mixing stage of the art for protection against scalding. Burnett, in 1881, applied to the art in its second stage—that of injecting the steam into cold water—an apparatus confessedly similar, except in mechanical details, to that of the patent in suit, and thereby confessedly accomplished in this class of devices the stated object of said patent. That this is so appears from an inspection of the patent, and from the declarations of Beaumont in the Patent Office when the original claims of the patent in suit were rejected on reference to the Burnett patent. In these circumstances, it becomes unnecessary to consider the later Tobey and Schaffstadt patents, which are relevant merely as illustrating the development of the third stage of the prior art, where water is heated by steam without mixing with it. They show that this idea was not new with Beaumont. Burnett shows that a device wherein you cannot turn on steam without having the cold water come at the same time was old. The still earlier art shows practicable devices to prevent scalding.

In view of these circumstances, and of the fact that the apparatus of the patent in suit is of doubtful utility, and does not appear ever to

have been put on the market, the claims can only be so interpreted as to cover details of construction. Chief among these is "the steam valve, J, for independently controlling the admission of steam," and "a pair of valves connected for simultaneous operation." Defendant's device is operated by a single handle only, on a stem carrying a single valve connecting with the water supply. Another valve, on a separate stem, connects with the steam supply, and is normally closed by a spring. Its operation depends entirely upon the operation of the water valve, but between the two there is "play enough to allow valves to open and close at different times." When the handle is turned, it lifts the first valve from its seat, and opens the cold-water passage. If the handle be further turned until its stem presses against the dependent stem of the steam valve, it will open the steam passage. Therefore defendant's device lacks the "pair of valves connected for simultaneous operation," and the "independent valve adapted to close the steam passage," of the first claim. For the same reasons, the second claim is not infringed. The sixth claim, which is confined by its letters to a specific construction of valve stem, is not infringed by the radically different construction adopted by defendant.

The decree is affirmed, with costs.